UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 26, 2018

LETTER TO COUNSEL

    RE:    *Margaret Shinaberry v. Commissioner, Social Security Administration*;[1]
             Civil Case No. SAG-17-1376

Dear Counsel:

    On May 18, 2017, Plaintiff Margaret Shinaberry petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for benefits. [ECF No. 1]. I have considered the parties' cross-motions for summary judgment and Ms. Shinaberry's reply. [ECF Nos. 19, 22, 25]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Ms. Shinaberry's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

    Ms. Shinaberry protectively filed a claim for Disability Insurance Benefits ("DIB") on November 5, 2013, alleging a disability onset date of April 8, 2011. (Tr. 180-83). Ms. Shinaberry later amended her alleged onset date to November 5, 2013. (Tr. 207). Her claim was denied initially and on reconsideration. (Tr. 99-112, 113-25). A hearing was held on January 7, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 41-94). Following the hearing, the ALJ determined that Ms. Shinaberry was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 21-35). The Appeals Council denied Ms. Shinaberry's request for review, (Tr. 1-7), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

    The ALJ found that Ms. Shinaberry suffered from the severe impairments of "obesity, degenerative disc disease of the cervical spine and the lumbar spine, status post left shoulder rotator cuff tear, and borderline intellectual functioning." (Tr. 24). Despite these impairments, the ALJ determined that Ms. Shinaberry retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

>     ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is
>     limited to occasionally reaching overhead on the left, non-dominant side. The
>     claimant is limited to occasionally operating foot controls bilaterally. The
>     claimant is limited to unskilled work performing simple, routine, and repetitive
>     tasks.

(Tr. 28). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Shinaberry could perform several jobs existing in significant numbers in the national economy. (Tr. 34-35). Accordingly, the ALJ determined that Ms. Shinaberry was not disabled. (Tr. 35).

Ms. Shinaberry raises several issues on appeal, including that: (1) the ALJ's decision did not comport with the Fourth Circuit's holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); (2) the ALJ erroneously determined that she was limited to light work; and (3) the ALJ erroneously gave weight to her Global Assessment of Functions ("GAF") score. Pl. Mot. 7-16. Each argument lacks merit and is addressed below.

First, Ms. Shinaberry argues that the ALJ erred in her RFC assessment of mental limitations. Specifically, Ms. Shinaberry contends that the ALJ failed to adequately support her RFC assessment with substantial evidence, and that the ALJ's decision did not comport with the dictates of *Mascio*. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

Here, at step three, the ALJ found that Ms. Shinaberry suffered from "moderate difficulties" in the area of concentration, persistence, or pace. (Tr. 27). In the RFC assessment, the ALJ provided that Ms. Shinaberry "is limited to unskilled work performing simple, routine, and repetitive tasks." (Tr. 28). Although a limitation to simple, routine, and repetitive tasks, without explanation, is insufficient under *Mascio*, the ALJ in the instant case explained that Ms. Shinaberry's "concentration and task persistence were adequate," after assigning great weight to Dr. Burlingame's medical opinions, and cited to evidence indicating that Ms. Shinaberry had no limitations related to pace. (Tr. 32) (citing Tr. 364-67); *see* (Tr. 366) (January 14, 2014 consultative psychological examination records, indicating that Ms. Shinaberry's processing speed was "Average"). The ALJ discussed and cited to the State agency psychological consultants' mental assessments, in which the psychological consultants opined that Ms. Shinaberry's ability to perform at a consistent pace without an unreasonable number and length

of rest periods was "[n]ot significantly limited," and that Ms. Shinaberry was "[a]ble to sustain [concentration, persistence, and pace] for extended period; able to complete a variety of tasks for 6-8 hours in an eight-hour period at an appropriate pace, and sustain this level across days and weeks." (Tr. 109, 123). Importantly, I disagree with Ms. Shinaberry's contention that the State agency psychological consultants' opinions and Dr. Burlingame's evaluation are at odds. Rather, the State agency consultants' suggested limitation to simple and repetitive tasks and a reduction in complex tasks, (Tr. 109, 123), is fully consistent with Dr. Burlingame's opinion that Ms. Shinaberry's "ability to tolerate work-related stresses and demands of a normal 40 hour work week with verbal requirements in reading and math calculation was deemed poor," (Tr. 367). Indeed, the jobs cited by the VE are unskilled, and require only levels 1-2 in math and language. *See, e.g.*, Order Caller, *Dictionary of Occupational Titles*, DICOT 209.667-014 (G.P.O.), 1991 WL 671807 (1991); Sales Attendant, *Dictionary of Occupational Titles*, DICOT 299.677-010 (G.P.O), 1991 WL 672643 (1991).

The ALJ's analysis, then, makes it clear that she believes Ms. Shinaberry's difficulties with concentration, persistence, and pace are limited to complex tasks. Under both *Mascio* and the Social Security regulations, it is improper for an ALJ to base a finding of "moderate" limitations on a difficulty with complex work. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(C)(3) (2015) ("[A claimant] may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion."). However, the ALJ's improper finding of "moderate limitations" based on complexity is harmless, because the thorough explanation allows me to understand the conclusion that Ms. Shinaberry's moderate limitation in concentration, persistence, or pace did not translate into a RFC limitation.

Second, Ms. Shinaberry argues that the ALJ erroneously determined that she was limited to light work. Specifically, Ms. Shinaberry appears to contend that the ALJ improperly rejected the sedentary limitation suggested by her treating source, Kristina Matthews, PA-C; that the ALJ erred in her determination that Ms. Shinaberry's testimony was not credible; and that the ALJ erroneously failed to include a "sit/stand" option in her RFC. Pl. Mot. 12-15.

Here, the ALJ adequately explained and supported her assignment of "little" weight to Ms. Matthews's opinion that Ms. Shinaberry was "unable to lift ten pounds." In addition to evidence from medical sources, the ALJ may consider evidence from "other sources," including physician assistants, as a source of "insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* In evaluating evidence from other sources, the ALJ may consider various factors, including "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* at *6. First, the ALJ observed that Ms. Matthews's opinion was "not supported with an explanation." (Tr. 32); *see* (Tr. 425). Indeed, Ms. Matthews's January 12, 2016 letter consists of three short sentences, and simply states: "Ms. Shinaberry has been under my medical care and it is my medical opinion that she has been unable to lift greater than ten pounds since November 2014." (Tr. 425). *See Brown ex rel. A.W. v. Comm'r of Soc. Sec.*, No.

Civ. SAG-12-52, 2013 WL 823371, at *2 (D. Md. Mar. 5, 2013) ("[I]t would be difficult for any ALJ to assign any meaningful weight to opinions devoid of evidentiary support."); *see also Beitzell v. Comm'r, Soc. Sec. Admin.*, No. Civ. SAG-12-2699, 2013 WL 3155443, at *3 (D. Md. June 18, 2013) (upholding the ALJ's assignment of weight while noting that the treating source's assessment "provided no narrative explanation for the limitations proposed in the form"). Second, the ALJ found that Ms. Matthews's opinion was not consistent with treatment records "showing no evidence of restrictions regarding lifting." (Tr. 32). The ALJ, for example, cited to Ms. Shinaberry's physical examination records "reveal[ing] normal musculoskeletal findings; . . . normal strength and tone in the left and right shoulders, a negative drop arm test, and normal strength and tone in the left and right elbows." *Id.* (citing (Tr. 403)). Finally, the ALJ considered the nature and extent of Ms. Shinaberry's relationship with Ms. Matthews, noting that "Ms. Matthews is not an acceptable medical source under Social Security regulations." (Tr. 32); *see* SSR 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). In light of the ALJ's thorough discussion and citation to the evidence of record, the ALJ properly rejected Ms. Matthews's suggestion that Ms. Shinaberry is unable to lift more than ten pounds.

Additionally, the ALJ adequately supported her determination that Ms. Shinaberry's statements regarding her alleged limitations were not credible. In assessing the credibility of a claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); *see also Brown v. Comm'r, Soc. Sec. Admin.*, 873 F.2d 251, 269 (4th Cir. 2017) ("[T]he ALJ must build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible . . . .") (internal quotation marks and citations omitted). An ALJ, however, cannot rely exclusively on objective evidence to undermine a claimant's subjective assertions of disabling pain. *See Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (holding that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's assertions).

Contrary to Ms. Shinaberry's assertions, the ALJ properly evaluated her subjective statements after evaluating medical and non-medical evidence in the record. After summarizing Ms. Shinaberry's statements regarding her alleged limitations, the ALJ found that her subjective complaints were undermined by her prior statements and her admitted daily activities and abilities. (Tr. 29). For example, the ALJ noted that Ms. Shinaberry "reported no problems with bathing, caring for her hair, or feeding herself," and stated that she "prepares her own meals daily, . . . drives a car, is able to go out alone, and can shop in stores." (Tr. 26); *see* (Tr. 29). Moreover, the ALJ discussed and cited to the medical evidence, noting that Ms. Shinaberry "did not continue with her physical therapy exercises after her initial course of physical therapy, suggesting that her pain was not as limiting as was alleged." (Tr. 29). Notably, the ALJ observed that, based on treatment records from 2013 until 2015, Ms. Shinaberry appeared to be "doing 'very well'" and that her treatment and medication "were 'helping her functionality' and that she was able to do household chores." (Tr. 30). Importantly, even if there is other evidence that may support Ms. Shinaberry's position, I am not permitted to reweigh the evidence or to

substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Ultimately, the ALJ's evaluation of the record amply supports the ALJ's conclusion that Ms. Shinaberry's alleged limitations were not consistent with the evidence.

Next, the ALJ did not err in failing to incorporate a sit/stand option in her RFC assessment. Notably, Ms. Shinaberry did not cite to any evidence supporting a sit/stand limitation, beyond her own subjective statements. *See* Pl. 13-15. Again, this Court finds that the ALJ properly evaluated the credibility of Ms. Shinaberry's alleged statements, as discussed above, and supported her findings with substantial evidence. In determining Ms. Shinaberry's RFC, the ALJ cited to treatment records and other medical records, including the State agency medical consultants' physical assessments that Ms. Shinaberry "can perform work at the light exertional level with occasional postural limitations." (Tr. 31). Moreover, the ALJ imposed additional RFC limitations based on Ms. Shinaberry's treatment records reflecting that she "had to use a lift in her right shoe to address a length discrepancy between the left leg and the right leg, and had a recent left shoulder rotator cuff tear." *Id.* Again, I am not permited to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays*, 907 F.2d at 1456. Thus, remand is not warranted on this basis.

Ms. Shinaberry further contends that the ALJ erroneously assigned weight to her GAF score. Pl. Mot. 15-16. It is well established that GAF scores are not determinative of disability. *See, e.g.*, *Davis v. Astrue*, Case No. JKS-09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010). Indeed, in her decision, the ALJ acknowledged that "the GAF scores are of limited evidentiary value as they reveal only snapshots of the claimant's level of functioning at a particular moment in time." (Tr. 33). However, nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record. *See Kozel v. Astrue*, Case No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform an ALJ's judgment.") (citing *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011), and *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)); *see also Siddiqui v. Colvin*, 95 F. Supp. 3d 833, 844 (D. Md. 2015) ("While . . . the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' the GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning.") (citations omitted). Here, the ALJ did not rely exclusively on Ms. Shinaberry's GAF scores, but rather engaged in a full consideration of the medical records. In addition to considering Ms. Shinaberry's GAF scores, the ALJ discussed and cited to the medical opinions of Ms. Shinaberry's psychological consultants. *See* (Tr. 31-33). For example, the ALJ assigned great weight to Dr. Burlingame's 2014 opinion, in which Dr. Burlingame opined that Ms. Shinaberry's "concentration and task persistence were adequate, her mood and affect were good, and she would be capable of managing benefits, should they be awarded." (Tr. 32). The ALJ also assigned great weight to the opinions of the State agency psychological consultants, who noted that Ms. Shinaberry "could not spell world backwards and could not do the serial seven subtractions. . . . [,] could carry out concrete, three step directions, and could read and follow a simple command." *Id.* Moreover, the ALJ evaluated and assigned weight to the GAF score only after finding that the score was consistent with Dr. Burlingame's consultative examination

results. (Tr. 33). Accordingly, I find that the ALJ's assignment of weight to Ms. Shinaberry's GAF score does not warrant remand.

Finally, in her Reply, Ms. Shinaberry raises a new argument—namely, that the ALJ's decision is "not consistent" with the Fourth Circuit's recent decision in *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018). Ms. Shinaberry, however, only reiterates her arguments with respect to the ALJ's credibility determination and the evaluation of Ms. Matthews's opinion, and presents new arguments related to the ALJ's assignment of weight to Dr. Mark Rosenthal's medical opinion and the ALJ's alleged failure to consider "the period the Plaintiff turned age 50 and after." Pl. Reply 1-5. Ms. Shinaberry's new arguments are waived, because they were not raised in her opening brief. *Thrasher v. Colvin*, 611 F. App'x 915, 918 (9th Cir. 2015) (citation omitted). In any case, the new arguments lack merit. The ALJ properly assigned "little" weight to Dr. Rosenthal's medical opinion that Ms. Shinaberry "was permanently and totally disabled," because his opinion: (1) "exceed[ed] the expertise of the physician and is reserved to the [SSA];" (2) was not supported by an explanation; and (3) was not consistent with his own treatment records. (Tr. 31). For example, the ALJ observed that Dr. Rosenthal recommended that Ms. Shinaberry "exercise with aerobic conditioning and hamstring stretches" between March, 2011 and August, 2012. *Id.* Thus, the ALJ supported the assignment of weight with substantial evidence. Next, Grid Rule 202.13, which applies to individuals closely approaching advanced age and who are unskilled with at least a high school education and a light RFC, directs a finding of "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App'x 2. Thus, the ALJ's failure to discuss the period after Ms. Shinaberry turned fifty years old was harmless, because the higher age range would not necessitate a finding of disability.

For the reasons set forth herein, Ms. Shinaberry's Motion for Summary Judgment, [ECF No. 19], is DENIED, and Defendant's Motion for Summary Judgment, [ECF No. 22], is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge